2002-NMCA-028

41 P.3d 356

**Brent R. O'NEEL, Plaintiff–Appellee,**

v.

**USAA INSURANCE COMPANY, Defendant–Appellant.**

No. 21,611.

Court of Appeals of New Mexico.

Jan. 16, 2002.

Certiorari Denied, No. 27,334, Feb. 21, 2002.

Gail Stewart, Steven Granberg Attorney at Law, P.A., Albuquerque, NM, James E. Casados, Gallagher, Casados & Mann, P.C., Albuquerque, NM, for Appellee.

Ripley B. Harwood, Eric Scott Jeffries, Jeffries & Rugge, P.C., Albuquerque, NM, for Appellant.

## OPINION

CASTILLO, Judge.

{1} Defendant (USAA) appeals the judgment entered in favor of Plaintiff (O'Neel) awarding damages and attorney fees for bad faith failure to pay a first party claim, breach of an insurance contract, and unfair insurance practices. USAA raises five issues on appeal. One issue challenges the jury's verdict as inconsistent. One issue questions the validity of the district court's award of attorney fees. Two issues object to the form of the special verdict and related jury instructions, and one issue seeks to assert a comparative fault defense to O'Neel's bad faith claim. For the reasons that follow, we affirm.

## FACTUAL BACKGROUND

{2} Following the burglary of a house he was building near Tome, New Mexico,

O'Neel submitted a claim under his USAA renter's insurance policy. Under the terms of the policy, O'Neel was entitled to the replacement cost for personal property stolen in the burglary. Consequently, O'Neel submitted a claim to USAA requesting reimbursement in the amount $7052. USAA began an extensive investigation into O'Neel's claim, which included two lengthy examinations of O'Neel under oath by USAA's attorney. Based on its investigation and evaluation of O'Neel's claim, USAA concluded that O'Neel overvalued the amount of his claim. Because of these ostensible overvaluations, USAA accused O'Neel of breaching the insurance contract by misrepresenting and concealing material facts and by failing to cooperate with the investigation. As a result, USAA denied O'Neel's claim in its entirety.

{3} Upon receiving notice that USAA denied his claim, O'Neel instituted this action to recover damages for bad faith breach of an insurance contract and unfair insurance claims practices. The district court referred the action to court-annexed arbitration, and the arbitrator's award in favor of USAA was ultimately appealed de novo to district court. A jury trial was held at which both sides presented evidence concerning the extent to which Plaintiff did or did not overvalue his claim and cooperate with USAA's investigation. Both sides also presented evidence from experts in the field of insurance claims practices to give their opinions on the reasonableness of USAA's claims handling practices. Although O'Neel valued his claim at over $7000, the jury awarded O'Neel only $2500 in compensatory damages. However, the jury also found that USAA breached the insurance contract in bad faith and engaged in unfair insurance practices. The jury, therefore, awarded O'Neel an additional $20,000 in punitive damages. In addition, the district court subsequently awarded O'Neel over $64,000 in attorney fees. USAA now appeals.

## DISCUSSION

{4} As indicated above, USAA raises five issues on appeal, which challenge the consistency of the jury's verdict, the propriety of the court's attorney fees award, and the extent to which the district court's jury instructions and special verdict form inadequately dealt with USAA's defenses. We address each of USAA's arguments in turn.

### I. Inconsistent Verdict

■ {5} USAA argues that the district court erred by refusing to rectify what USAA perceives as an inconsistent jury verdict. O'Neel contends that USAA waived review of this issue on appeal because it failed to alert the district court to the alleged inconsistency before the jury was discharged. See G & G Serv., Inc. v. Agora Syndicate, Inc., 2000–NMCA–003, ¶¶ 41–42, 128 N.M. 434, 993 P.2d 751. In response, USAA maintains that it did not waive review of this issue because it did not have a fair opportunity to object before the jury was discharged. See Rule 12–216(A) NMRA 2001 (excusing absence of objection if party has no opportunity to object). In support of its position, USAA emphasizes that only three minutes elapsed from the time that the jury returned to the courtroom with its verdict until proceedings were concluded. However, during that time, the court read the special verdict in its entirety in a way that USAA should have realized the alleged inconsistency. The judge then polled the jurors and told them that their service was concluded, but asked them to wait in the jury room until he could talk to them. The court then instructed counsel on the preparation of the judgment and asked counsel if there was anything else, to which counsel for USAA answered in the negative. At this point, the jury was still available and USAA could have raised its issue and sought a cure for the inconsistency. Under the authority of G & G Services, Inc., USAA waived this issue. Even if we were to assume that USAA did raise a proper objection, for the reasons that follow we find no reversible error.

■ {6} USAA argues that it was inconsistent for the jury to find that USAA breached the insurance contract in bad faith and engaged in unfair claims practices while at the same time awarding O'Neel less in compensatory damages than he originally claimed. USAA notes that even though O'Neel submitted a theft claim to USAA for

over $7000, the jury awarded O'Neel only $2500 in compensatory damages. USAA contends that the jury's compensatory damages award implicitly acknowledged that O'Neel overvalued his claim. Thus, USAA reasons that it was inconsistent for the jury to find that USAA acted in bad faith in denying O'Neel's claim. USAA, therefore, believes that the jury's award of $20,000 in punitive damages to O'Neel must be vacated to cure the purported inconsistency in the jury's verdict. *See McLelland v. United Wis. Life Ins. Co.,* 1999–NMCA–055, ¶ 31, 127 N.M. 303, 980 P.2d 86; *see also Paiz v. State Farm Fire & Cas. Co.,* 118 N.M. 203, 210–11, 880 P.2d 300, 307–08 (1994).

{7} In support of its argument, USAA cites to a number of out-of-state cases for the proposition that a claim of bad faith must fail as a matter of law when the insured engages in material misrepresentations during the claims process. However, USAA's reliance on those cases is misplaced. Unlike the cases cited by USAA, there is a view of the evidence presented in this case from which the jury could reasonably and properly conclude that O'Neel did not engage in intentional misrepresentations but was entitled to less than the full amount of the claim he submitted to USAA and that USAA nevertheless acted in bad faith during its handling of O'Neel's claim for reasons other than its refusal to pay O'Neel's claim in full. *See Norwest Bank N.M. v. Chrysler Corp.,* 1999–NMCA–070, ¶ 22, 127 N.M. 397, 981 P.2d 1215 (recognizing that appellate standard of review requires appellate court to view evidence in light most favorable to support jury verdict rather than speculate on a theory of the evidence under which the jury may have been confused and reached its conclusions for the wrong reason).

{8} Although the jury awarded O'Neel less than what he originally claimed from USAA, the record reveals that the jury could have concluded that O'Neel's overvaluation of the claim was the product of mistake and inadvertence, not intentional misrepresentations. *See Eldin v. Farmers Alliance Mut. Ins. Co.,* 119 N.M. 370, 374, 890 P.2d 823, 827 (Ct.App. 1994) (recognizing that whether insured's misstatements to insurer were product of

fraud, or mistake and confusion, is question of fact for jury to resolve). For example, USAA places great weight on the fact that O'Neel claimed $1500 to replace a stolen stove that originally cost $185. However, O'Neel's testimony suggested that he may have been confused about the meaning of his replacement cost policy. O'Neel testified that he purchased a $1500 stove to replace his stolen stove, but also admitted that he originally paid $185 for the stolen stove. O'Neel explained that he had made a mistake in his sworn statement concerning the cost of the stolen stove, and he acknowledged that it was misleading but did not mean for it to come across that way. In light of this testimony, the jury could reasonably determine that O'Neel did not engage in intentional misrepresentations but was simply confused or mistaken with regard to what he was allowed to claim from USAA. *Id.* (determining whether insured was engaged in fraud or was simply mistaken or confused is dependent on jury's determination of credibility of witnesses).

{9} We recognize that USAA maintains that O'Neel's claim for bad faith should fail as a matter of law even if O'Neel's overvaluation of his claim was done in complete good faith because an innocent overvaluation would justify USAA's refusal to pay O'Neel's claim. *See United Nuclear Corp. v. Allendale Mut. Ins. Co.,* 103 N.M. 480, 486, 709 P.2d 649, 655 (1985). However, the record contains evidence to support a finding of bad faith against USAA based on conduct separate from USAA's refusal to pay O'Neel the full amount of the claim originally submitted to USAA. For example, there was evidence that USAA initially imposed duties on O'Neel based on an insurance policy that was not the policy that O'Neel had purchased. In addition, there was evidence from which the jury could find that USAA's investigation was excessive and unnecessarily invasive. In particular, USAA subjected O'Neel to two lengthy examinations during the claims review process and required O'Neel to produce substantial documentation about his personal financial condition and history, which the jury could have concluded was not specifically required under the terms of O'Neel's policy. USAA also questioned O'Neel about his

personal relationship with the woman he referred to as his life partner, and repeatedly asked O'Neel to have the woman give a sworn statement even though she was not a named insured and USAA had already told O'Neel that her property was not covered under the policy. Despite USAA's extensive investigation into O'Neel's claim, O'Neel did not learn until the time of trial that USAA was not raising any issue with regard to the burglary. Moreover, there was testimony suggesting that O'Neel may have removed certain items of property from his claim because USAA told him they were not covered even though they may have been covered under the terms of the policy. Finally, contrary to the facts in *United Nuclear Corp.*, 103 N.M. at 486, 709 P.2d at 655, it does not appear that USAA simply wanted to contest the amount of damages claimed in a court of law; instead, the jury could have found that USAA set up O'Neel in anticipation of a claim of fraud which it would then use, and did use, to attempt to totally void any obligation under the policy.

{10} O'Neel also presented the report of an expert witness on the subject of insurance claims handling practices who reviewed documentation generated during the claims review process and pre-trial litigation of this case. The expert opined that USAA accused O'Neel of intentional concealment and misrepresentations without any credible evidence to support its accusations; that USAA intentionally and maliciously misinterpreted the policy, coverages, and duties of the insured; that the scope of USAA's examination process ignored the terms of the policy; that USAA engaged in an inquisition-style examination and documentation process without justification or support; and that USAA's claim that O'Neel failed to cooperate was inconsistent with the record.

■ {11} The jury was instructed that to establish a claim for bad faith failure to pay a first party claim, O'Neel had to prove that USAA failed to deal fairly with O'Neel by proving either that USAA's reasons for refusing to pay were frivolous or unfounded, that USAA did not act reasonably under the circumstances to conduct a fair investigation of O'Neel's claim, or that USAA did not act reasonably under the circumstances to conduct a fair evaluation of O'Neel's claim. To establish a claim for an unfair claims handling practices, O'Neel had to prove that USAA failed to adopt and implement reasonable standards for the prompt investigation and processing of insureds' claims arising under insurance policies. Based on the evidence outlined above, we believe there was substantial evidence to support the jury's finding of bad faith and unfair claims practices. The fact that the jury also valued O'Neel's theft claim at roughly one-third of the amount originally submitted by O'Neel does not render the jury's finding of bad faith irrational or inconsistent because USAA's bad faith could have been premised on conduct other than its refusal to pay O'Neel the full amount that he originally claimed.

## II. Attorney Fees Award

{12} USAA also argues that the district court erred in awarding O'Neel his attorney fees. The district court awarded attorney fees based on NMSA 1978, § 59A–16–30(B) (1990), and NMSA 1978, § 39–2–1 (1977). Under Section 59A–16–30(B) the district court has the discretion to award attorney fees against the party who has engaged in an unfair claims practices if that party has willfully engaged in such a violation. Under Section 39–2–1, the insured is entitled to an award of attorney fees if he prevails in any type of first party coverage action against the insurer and the insurer acted unreasonably in failing to pay the claim. USAA raises a number of attacks on the award of attorney fees under either section.

■ {13} To the extent that attorney fees were awarded for a willful unfair claims practices under Section 59A–16–30(B), USAA argues that Plaintiff failed to present any evidence in support of its only asserted basis for an alleged violation of the Act, namely, that USAA failed to adopt or implement reasonable standards for claims handling. Although USAA acknowledges that O'Neel introduced the report of his bad faith expert, John Kezer, in support of his claim under the Act, USAA contends that Kezer's report fails

to address the reasonableness of USAA's claims handling practices. We disagree.

{14} As indicated above, the report specifically states that USAA engaged in an inquisition-style examination and documentation process without justification or support; that USAA accused O'Neel of intentional concealment and misrepresentations without any credible evidence to support its accusations; that USAA intentionally and maliciously misinterpreted the policy, coverages and duties of the insured; and that the scope of USAA's examination process ignored the terms of the policy. Moreover, based on the evidence discussed above concerning the manner in which O'Neel was treated by USAA during the claim evaluation and investigation process, there was substantial evidence from which the fact finder could reasonably conclude that USAA failed to implement reasonable standards for the handling of O'Neel's claim. Finally, by awarding O'Neel punitive damages, the jury necessarily found that USAA's actions were malicious, reckless, or wanton. In light of the foregoing, we find no abuse of discretion in the district court's decision to award attorney fees under Section 59A–16–30(B).

■ {15} We recognize that USAA presented its own expert witness who was of the opinion that USAA's claims handling practices were reasonable and consistent with industry standards. However, the fact finder was free to reject that expert testimony, and we will not reweigh the evidence on appeal. *See Sanchez v. Molycorp, Inc.*, 103 N.M. 148, 153, 703 P.2d 925, 930 (Ct.App. 1985).

{16} Although we believe the district court's award of attorney fees could be upheld solely under Section 59A–16–30(B), we also believe it was appropriate for the district court to award attorney fees based on Section 39–2–1. USAA appears to argue that the district court's reliance on Section 39–2–1 to award attorney fees was inappropriate because O'Neel never relied on that statute as a basis for recovering attorney fees. However, the record reveals that O'Neel did request an alternative award of attorney fees under Section 39–2–1 orally and in writing before the court made its final ruling on

attorney fees. And given that the jury found that USAA acted in bad faith in the handling of O'Neel's insurance claim and awarded O'Neel punitive damages based on USAA's conduct, the district court was justified in basing its award of fees alternatively on Section 39–2–1. *See Jessen v. Nat'l Excess Ins. Co.*, 108 N.M. 625, 630, 776 P.2d 1244, 1249 (1989) (awarding of punitive damages by district court under Section 39–2–1 is an implicit finding of unreasonableness that supports award of attorney fees when jury awards punitive damages for failure to pay first party claim), *modified on other grounds by Paiz*, 118 N.M. at 211, 880 P.2d at 308.

{17} USAA relies on *Mitchell–Carr v. McLendon*, 1999–NMSC–025, ¶ 29, 127 N.M. 282, 980 P.2d 65, and *Jacob v. Spurlin*, 1999–NMCA–049, ¶ 27, 127 N.M. 127, 978 P.2d 334, to suggest that, even if O'Neel raised Section 39–2–1 as a basis for an award of attorney fees in its reply to USAA's objection to an award of fees, it was unfair for the district court to rely on that ground because USAA did not have a chance to respond to the applicability of Section 39–2–1. We question USAA's reliance on these cases because they concern only proper appellate procedure and implicate only the unfairness that may result from considering an argument that has been raised for the first time in a reply brief on appeal. In any event, the record shows that USAA did have a chance to respond to the propriety of awarding attorney fees under Section 39–2–1 during the post-trial hearing on April 27, 2000, to address various outstanding motions, and USAA did not object to the award of fees under Section 39–2–1 at that time.

■ {18} USAA also challenges the manner in which the district court awarded attorney fees because the court did not issue written findings and conclusions to support the award of the fees despite USAA's request to do so. USAA cites *Woodson v. Phillips Petroleum Co.*, 102 N.M. 333, 695 P.2d 483 (1985), in support of its claim that the court was required to enter findings and conclusions on the matter of attorney fees. *Woodson* recognizes that findings and conclusions are often needed to provide the appellate court with an adequate basis for review-

ing whether the attorney fees awarded in workers' compensation cases are reasonable in amount. *Id.* at 339, 695 P.2d at 489. To the extent that *Woodson* has been applied in a context outside of workers' compensation law, findings and conclusions have been required to substantiate the amount of fees awarded. *See Lenz v. Chalamidas,* 109 N.M. 113, 118–19, 782 P.2d 85, 90–91 (1989).

{19} USAA does not attack the award of attorney fees as unreasonable in amount, and we see no basis in the record for questioning the amount awarded. USAA's objection to the absence of findings and conclusions focuses on whether it was appropriate to award any attorney fees to O'Neel. As discussed above, O'Neel's entitlement to attorney fees was established by the factual determinations implicit in the jury's award of punitive damages. As such, we see no basis for concluding that the district court should have issued findings and conclusions with regard to a matter that was already decided by the jury. *See Jessen,* 108 N.M. at 631, 776 P.2d at 1250 (acknowledging that district court does not abuse discretion in awarding attorney fees based on jury's implicit finding of unreasonableness).

{20} USAA relies on *City of Farmington v. L.R. Foy Constr. Co,* 112 N.M. 404, 409–10, 816 P.2d 473, 478–79 (1991), to suggest that the district court needed to make a separate inquiry to determine whether USAA's conduct rose to a level of willfulness that would support an award of attorney fees. USAA's reliance is misplaced because in *City of Farmington* the district court awarded attorney fees against the City for pursuing a groundless action without determining whether the City knew that the suit was groundless, which was a predicate to awarding attorney fees. In contrast, because the jury awarded punitive damages in this case, the district court could rely on the jury's explicit determination that USAA's conduct was malicious, reckless, or wanton and its own view that the same facts support the predicate of willfulness necessary to award attorney fees to O'Neel. And because USAA does not question the actual amount that was awarded, we see no need to reverse for findings and conclusions to justify the amount

awarded by the district court. *See In re Termination of Parental Rights of Doe,* 98 N.M. 540, 541, 650 P.2d 824, 825 (1982) (explaining that an appellate court will not address issues the parties do not argue on appeal).

■ {21} USAA's final challenge to the award of attorney fees concerns the district court's decision to include O'Neel's pre-arbitration attorney fees as part of the amount awarded. Because USAA failed to object below to the award of pre-arbitration attorney fees, USAA urges this Court to consider its arguments in this regard as an issue of general public interest. *See* Rule 12–216(B)(1). While USAA's arguments against awarding pre-arbitration attorney fees may raise novel issues, we are unpersuaded by USAA's attempts to couch its arguments as matters of general public interest because the award of pre-arbitration fees is not the type of decision that affects the interests of the State at large or affects the law that will be applied to a large number of cases in the near future. *See Pineda v. Grande Drilling Corp.,* 111 N.M. 536, 540, 807 P.2d 234, 238 (Ct.App.1991) (invoking general public interest exception to preservation requirement alerted Workers' Compensation Division that soon-to-be promulgated administrative regulations would not apply to any case filed before the regulations are filed with State Records Center); *State v. Doe,* 90 N.M. 572, 574, 566 P.2d 121, 123 (Ct.App.1977) (invoking general public interest exception to address several cases raising questions concerning the children's court's authority to commit mentally ill children to the boys' school, authority to order psychiatric treatment for the children, and authority to maintain control over the release of the children once they were committed to the Department of Corrections boys' school).

{22} In short, the district court's decision to award pre-arbitration attorney fees in this case in which fees were awarded on a basis other than the local rule involving court-annexed arbitration, LR 2–603(VI)(D) NMRA 2001, does not have the far-reaching impact necessary to invoke the general public interest exception to our general preservation requirements. Accordingly, in the ab-

sence of a timely objection below, we will not review the district court's decision to grant pre-arbitration attorney fees in this case.

## III.  Special Verdict Form

■ {23} USAA objects to the special verdict form submitted to the jury because it did not explicitly require the jury to consider USAA's affirmative defenses. O'Neel contends that USAA failed to properly preserve this issue because it never argued to the district court that the special verdict form was defective if it did not include USAA's affirmative defenses. We disagree.

{24} The record indicates that just before the district court called the jury in for the reading of jury instructions, USAA specifically objected to the lack of any questions in the special verdict form asking the jury to decide whether O'Neel had breached the insurance contract or breached his duty of good faith under the contract. Although USAA did not specifically say that the special verdict form should include questions about its affirmative defenses, USAA did ask for questions that would in effect ask the jury to specifically accept or reject the affirmative defenses. Moreover, USAA specifically referenced its requested special verdict forms in its argument to the court which included questions about its affirmative defenses. In short, we believe USAA adequately preserved this issue. *See Woolwine v. Furr's, Inc.,* 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct.App.1987) ("To preserve an issue for review on appeal, it must appear that appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court."). We therefore proceed to consider the merits of USAA's argument.

■ {25} USAA argues that the special verdict form was unfair and one-sided because it encouraged the jury to consider O'Neel's claims in isolation without considering USAA's affirmative defenses. USAA maintains that once a district court elects to use special interrogatories all material issues must be included in the special verdict form. However, USAA's argument minimizes the fact that the jury was instructed on USAA's affirmative defenses. In particular, Instruc-

tions 10, 11, and 22 specifically informed the jury of USAA's affirmative defenses.

■ {26} When considering whether the jury was properly instructed, we must consider the instructions as a whole to determine whether all issues of fact and law were fairly and accurately presented to the jury. *See Kestenbaum v. Pennzoil Co.,* 108 N.M. 20, 26, 766 P.2d 280, 286 (1988). Because the jury was specifically directed that it should find in USAA's favor if it found that O'Neel breached the insurance contract by engaging in material misrepresentations or otherwise prejudiced USAA's ability to evaluate the claim by failing to cooperate in USAA's investigation, we find no reversible error based on the lack of specific questions concerning USAA's affirmative defenses within the special verdict form itself. *See Hourigan v. Cassidy,* 2001–NMCA–085, ¶¶ 26–27, 131 N.M. 141, 33 P.3d 891 (finding no reversible error in special verdict form that fails to include question about causation where issue of causation was covered by other jury instructions); *see also Concise Oil & Gas P'ship v. La. Intrastate Gas Corp.,* 986 F.2d 1463, 1474 (5th Cir.1993) (concluding that separate interrogatories for each affirmative defense are not necessary where instructions and interrogatories together adequately present issues to jury); *Perzinski v. Chevron Chem. Co.,* 503 F.2d 654, 659–60 (7th Cir. 1974) (failing to include question regarding whether plaintiff was contributorily negligent was not reversible error where other instructions adequately covered issue of contributory negligence); *Johnson v. First Nat'l Bank of Shreveport,* 792 So.2d 33, 54 (La.Ct.App. 2001) (holding that covering affirmative defenses in general instructions instead of special interrogatories is not abuse of discretion by district court).

## IV.  Bad Faith Jury Instructions

{27} USAA also objects to the manner in which the district court instructed the jury on O'Neel's bad faith claim. In particular, USAA argues that the district court committed reversible error by modifying UJI 13–1702 NMRA 2001. O'Neel asserts that USAA failed to preserve this issue below. In a motion to supplement the record, USAA's

attorneys sought to include affidavits in the record below to establish that USAA had objected to the form of the instructions during an off-the-record conference. The district court denied the motion to supplement the record, and O'Neel suggests that this establishes USAA in fact failed to raise a timely objection to the instruction that it now seeks to challenge on appeal. Since the district court denied USAA's motion to supplement the record with affidavits summarizing USAA's objections to the jury instructions, there is no objection to the instructions on the record. *See State v. Reynolds,* 111 N.M. 263, 267, 804 P.2d 1082, 1086 (1990) ("Matters outside the record present no issue for review."). As such, this issue does not appear properly preserved in the record of this appeal. *See* Rule 12–216(A) (failing to timely object precludes review of issue on appeal). Even if we were to assume that USAA did raise a timely objection, for the reasons that follow we find no reversible error.

{28} USAA challenges Instruction 8 as an improper modification of UJI 13–1702. *See* Rule 1–051(D) NMRA 2001 (allowing for deviation from uniform jury instruction if, under the circumstances of the case, the UJI is erroneous or otherwise improper and the court so finds and states its reasons on the record); *see also Brooks v. K–Mart Corp.,* 1998–NMSC–028, ¶ 7, 125 N.M. 537, 964 P.2d 98. We disagree with USAA's characterization of the record. UJI 13–1702 was actually given in its entirety as Instruction 18. To the extent that portions of UJI 13–1702 also were included as part of Instruction 8, we believe that the court acted properly by including the elements of O'Neel's bad faith claim within the form required by UJI 13–302B NMRA 2001.

{29} USAA maintains that by including the elements of Plaintiff's bad faith claim in two separate jury instructions, the district court unfairly emphasized Plaintiff's claims to the jury. However, USAA ignores that its own affirmative defenses also were submitted in two separate instructions, one patterned after UJI 13–1710 NMRA 2001 and one patterned after UJI 13–302D NMRA 2001. Accordingly, we find no merit to USAA's claim

that the district court's instructions unfairly emphasized O'Neel's theory of the case.

{30} Although USAA also objects to the structure of Instruction 8 because it allowed the jury to find bad faith if it found that USAA failed to conduct a fair investigation *or* fair evaluation of the claim, we find no requirement in UJI 13–1702 that an insured must prove both an unfair investigation *and* unfair evaluation to establish a claim of bad faith. To the extent that USAA also objects to the fact the Instruction 8 was actually entitled "Plaintiff's Instruction 8" because it gave O'Neel an unfair advantage, we agree with O'Neel that attributing the instruction to Plaintiff rather than the court was as likely to prejudice O'Neel because the jury was to consider only the court's instructions as the applicable law. In short, considering the instructions as a whole, we find no error. *See Kestenbaum,* 108 N.M. at 26, 766 P.2d at 286.

## V. Comparative Fault Defense

{31} USAA asks this Court to recognize a defense of comparative fault to an insurance bad faith claim. However, acknowledging that it failed to raise this as a defense below, USAA asks us to consider this issue as a matter of general public interest.

{32} For an issue to be considered on appeal there must have been a timely objection below. *See* Rule 12–216(A); *Woolwine,* 106 N.M. at 496, 745 P.2d at 721. As discussed above with regard to USAA's unpreserved challenge to the award of pre-arbitration attorney fees, on rare occasions this Court will suspend the general preservation requirement when the issue raised on appeal concerns a matter of general public interest. *See Pineda,* 111 N.M. at 540, 807 P.2d at 238; *Doe,* 90 N.M. at 574, 566 P.2d at 123. We find no basis for applying the general public interest exception in this case. We recognize that adoption of a comparative fault defense could apply to a large number of cases in the future. However, in contrast to cases like *Pineda* and *Doe,* there is no indication that the district courts will fail to rule correctly

when a claim to such a defense is raised and fully developed below. To allow an appellant to raise an unpreserved issue on appeal simply because it is novel and has the potential for applying to similar cases in the future would essentially allow the general public interest exception to swallow the general rule of preservation. We therefore decline to address USAA's arguments for recognizing such a defense because its arguments are raised for the first time on appeal.

**CONCLUSION**

{33} Based on the foregoing, we affirm the district court's judgment.

{34} **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD, Judge, and CYNTHIA A. FRY, Judge.