This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-40750**

**KATHLEEN M. PERLINSKI and
TATIANNA PERLINSKI,**

Plaintiffs-Appellants,

v.

**USAA CASUALTY INSURANCE COMPANY,**

Defendant-Appellee,

and

**JOHN AND JANE DOES 1-10,**

Defendants.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY
Bryan Biedscheid, District Court Judge**

Bleus & Associates, LLC
George Anthony Bleus
Diane P. Donaghy
Albuquerque, NM

for Appellants

Modrall, Sperling, Roehl,
Harris & Sisk, PA
Jennifer A. Noya
Sonya R. Burke
Shannon N. Nairn
Albuquerque, NM

for Appellee

**BUSTAMANTE, Judge, retired, sitting by designation.**

**{1}**     Plaintiffs Kathleen Perlinski and Tatianna Perlinski appeal the district court's grant of summary judgment dismissing all of their contractual, statutory, and common law tort claims against Defendant USAA Casualty Insurance Company (USAA). Plaintiffs argue: (1) there are genuine issues of material fact requiring a trial on their uninsured motorist (UM) coverage claim; (2) there is a genuine issue of material fact regarding their bad faith claim based on the unreasonableness of USAA's investigation; (3) even if the district court did not err in rejecting their arguments regarding coverage and bad faith, the district court erred in dismissing Plaintiffs' other claims; and (4) Kathleen is a proper plaintiff. We affirm.

**BACKGROUND**

**{2}**     On March 9, 2020, around 9:00 p.m., Tatianna was driving eastbound on I-40 in the far-left lane of the four-lane freeway. At the same time, pedestrian James Guill walked from south to north across the freeway. Tatianna struck Guill when he walked into her path. After the impact, Tatianna's vehicle slid across the freeway, collided with the southern guardrail and coasted to a stop on the left shoulder. Hugo Melchor Jr. was driving with Dawn Dadey eastbound in a different lane behind Tatianna. They saw the impact, stopped near the collision, and separately tried to help Tatianna and Guill. Guill was pronounced dead at the scene, and Tatianna suffered serious injuries that required her to be hospitalized for two weeks.

**{3}**     At the time of the collision, Tatianna was insured under a USAA policy, which included UM coverage. A day after the collision, Tatianna's father, Anthony Perlinski, reported the accident to USAA and Heidi Hawken was assigned as the claim adjuster. Hawken initially informed Anthony that the incident would be covered under their UM coverage and sent Anthony an email that day indicating that Tatianna's vehicle would be covered.

**{4}**     Several weeks later, Hawken received a supplemental police report from the incident and two days later indicated in her internal notes that her analysis was complete. In mid-June, Hawken noted that there was no UM exposure and obtained a legal opinion on the matter from an outside firm, David Morse & Associates (Morse), which provides independent investigations and insurance adjusting.

**{5}**     After securing counsel, Tatianna sent a letter of representation in March 2020 and made a claim for UM coverage in June 2020. On June 24, 2020, after the demand letter was received, USAA filed a declaratory relief action in the United States District Court for the District of New Mexico. Tatianna and Kathleen—Tatianna's mother—filed their first complaint against Defendant and other entities in the First Judicial District Court on June 29, 2020. USAA removed the matter to the federal district court in October 2020. After a significant procedural history that need not be reviewed here, the

case was remanded back to state court and Plaintiffs filed an amended complaint against USAA and John and Jane Does 1-10.

{6}    USAA filed a motion for summary judgment on all of Plaintiffs' claims arguing that uninsured motorist benefits were not available because the occurrence was caused solely by the pedestrian Guill; USAA had not breached the contract of insurance with respect to medical payments coverage; Plaintiffs' extra-contractual claims failed as a matter of law; and Kathleen was not a proper party to the action. USAA also filed a motion to stay discovery and for a protective order relieving USAA of its obligation to respond to discovery. After full briefing on both motions, the district court held a hearing on the two motions. The district court ordered USAA to provide nonprivileged portions of its claim file and an accompanying privilege log; that Plaintiffs depose the claim adjuster responsible for making claims; and that, within twenty days of the parties' receipt of the transcript of the deposition, Plaintiff file a supplementary response to USAA's motion for summary judgment. Approximately two months later, Plaintiffs filed a supplemental response to USAA's motion for summary judgment and then USAA filed a reply to Plaintiffs' motion.

{7}    The district court held a hearing on USAA's motion for summary judgment, and orally granted the motion. It then entered an order granting USAA's motion and dismissing Plaintiffs' complaint. Plaintiffs appealed.

**DISCUSSION**

**I.    The District Court's Order Granting USAA's Motion for Summary Judgment Is Final and Appealable**

{8}    Before turning to the substance of Plaintiffs' claims of error, we must address a jurisdictional question. When we placed the case on the general calendar, we directed "the parties to also address the question of whether unserved John and Jane Does must be explicitly dismissed in the district court's order to render the order granting summary judgment in favor of Defendant USAA[] final and appealable." Plaintiffs' first amended complaint made claims against John and Jane Does 1-10. John and Jane Does 1-10 were never served, identified, or appeared in the case. The parties argue that the district court's order granting USAA's motion for summary judgment was final based on *Camarena v. Superior Contracting Corp.*, 2023-NMCA-043, ¶¶ 13-15, 534 P.3d 186*, cert. denied*, 2023-NMCERT-006 (S-1-SC-39836). We agree. In *Camarena*, this Court determined that a district court's failure to dismiss an unserved defendant does not keep a case from being final. *Id.* As Jane and John Does 1-10 were not served and they did not voluntarily appear in the case, the district court did not exercise jurisdiction over them, and there was never a claim pending against them. *See id.* ¶ 15. Thus, an order dismissing John and Jane Does 1-10 was unnecessary for the decision of the district court to grant USAA's motion for summary judgment to be final.

**II.    Standard of Review for Summary Judgment**

**{9}** "Summary judgment is reviewed on appeal de novo." *Juneau v. Intel Corp.*, 2006-NMSC-002, ¶ 8, 139 N.M. 12, 127 P.3d 548. We view the evidence in the light most favorable to the party opposing summary judgment. *City of Albuquerque v. BPLW Architects & Eng'rs, Inc.*, 2009-NMCA-081, ¶ 7, 146 N.M. 717, 213 P.3d 1146. "In New Mexico, summary judgment may be proper when the moving party has met its initial burden of establishing a prima facie case for summary judgment." *Romero v. Philip Morris Inc.*, 2010-NMSC-035, ¶ 10, 148 N.M. 713, 242 P.3d 280. "Once this prima facie showing has been made, the burden shifts to the non[]movant to demonstrate the existence of specific evidentiary facts which would require trial on the merits." *Id.* (internal quotation marks and citation omitted). When there is no genuine issue of material fact, we review the grant of summary judgment de novo. *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582.

### III. Plaintiffs Raised No Genuine Issue of Material Fact Regarding the Culpability of Any Other Motorist for the Collision

**{10}** Plaintiffs argue that the record demonstrates a genuine issue of material fact because other vehicles on the road that did not stop, that swerved out of the way, or that Guill was trying to avoid share some sort of comparative fault in the accident. They assert that because of this, there is an issue of fact for the jury to determine whether one or more unidentified motorists' actions were a legal, proximate, and contributing cause of the collision.

**{11}** The Uninsured Motorist Act (UMA) requires insurers to offer UM coverage for accidents "arising out of the ownership, maintenance or use of a motor vehicle." NMSA 1978, § 66-5-301(A), (B) (1983). The UMA is meant "to protect individual members of the public against the hazard of culpable uninsured motorists." *Romero v. Dairyland Ins. Co.*, 1990-NMSC-111, ¶ 6, 111 N.M. 154, 803 P.2d 243. As our Supreme Court noted in *Britt v. Phoenix Indemnity Insurance Co.*, 1995-NMSC-075, ¶ 12, 907 P.2d 994, the UMA specifically requires that a UM "insurer's duty to indemnify is predicated upon the injured plaintiff's entitlement to recover damages from the uninsured motorist." As such, UM coverage is not available if an occurrence is caused solely by the actions of a pedestrian. Plaintiffs' USAA insurance policy provided UM coverage, and the insuring agreement explains the coverage under similar terms as those found in the UMA statute.

**{12}** The record demonstrates that Tatianna was driving in the far-left lane of four lanes of traffic heading eastbound on I-40. Around that time, Guill started walking from south to north across the freeway. Dadey and Melchor recalled there was a vehicle in the far-left lane—driven by Tatianna—a vehicle to their left, they were in the center lane, and there were several vehicles in the far-right lane and the fourth lane of traffic ahead of their car.[1] Dadey saw two vehicles swerve out of the way to avoid Guill. She also saw Guill move north toward the far-left lanes of traffic while he was trying to avoid getting

---

[1]We acknowledge that there is some contradiction in the testimony about the lanes of traffic, we assume because of the lanes exiting on the off-ramp. However, the lack of clarity on this point has no bearing on our analysis.

hit. Melchor noticed Guill trying to cross the interstate, dodging cars, and that Guill looked like he was playing "FROGGER." Both Dadey and Melchor heard a loud "bang" and realized that Guill was hit by the vehicle in the far-left lane. After the collision, Tatianna's vehicle swerved south across all four lanes of traffic where it hit the guard rail and bounced off before coasting to a stop on the south shoulder of the freeway. Dadey recalled one car pulled over on the shoulder after the impact but then quickly drove off without attempting to assist Tatianna or Guill. Melchor stated that no vehicles appeared to stop to assist Tatianna.

**{13}** The record demonstrates that the collision was the fault of Guill—a pedestrian. Plaintiffs argue that the unidentified motorists who swerved to avoid the pedestrian caused Guill to walk into the lane where Tatianna hit him, and they contend that a driver who left the scene of the accident might have somehow contributed to the cause of the accident without explaining how that driver contributed or what evidence supports what appears to be pure speculation about this driver's role. We agree with the district court's assessment that there is no triable evidence that those motorists did anything that could reasonably be deemed negligent and thus at fault. Guill walked across a freeway where he could have reasonably expected cars to be driving at high speeds that he would have to avoid. It was nighttime and Guill was not wearing any reflective clothing. A motorist merely swerving to avoid a pedestrian appearing on the freeway in that context does not raise a question of fact as to their negligence. There is no indication that the other motorists were speeding or that they were negligent in any way. In addition, there is no evidence that the actions of the other motorists, even if negligent, caused Tatianna to collide with the pedestrian by, for example, affecting Tatianna's ability to see Guill or interfering with her ability to take evasive action of her own. Thus, there is no genuine issue of material fact—and the record will not support a reasonable inference—that an uninsured motorist shared any culpability for the collision.

**{14}** Citing *Demir v. Farmers Texas County Mutual Insurance Co.*, 2006-NMCA-091, 140 N.M. 162, 140 P.3d 1111, Plaintiffs remind us that New Mexico does not require that there be any physical contact with an uninsured vehicle for UM coverage to apply. We, of course, do not disagree with that assertion, but it does not require reversal here because there is no evidence that the negligence of other motorists was a contributing cause of the collision between Tatianna and the pedestrian.

## IV. Plaintiffs Did Not Raise a Genuine Issue of Material Fact Regarding Their Failure to Investigate Claim

**{15}** Plaintiffs next argue that the district court erred in determining that there was no genuine issue of material fact regarding their bad faith failure to investigate claim and that USAA's investigation was "reasonable under these factual circumstances." We disagree, though not entirely for the reasons argued by USAA. The parties' arguments are reminiscent of the positions taken by the parties in *American National Property and Casualty Co. v. Cleveland*, 2013-NMCA-013, ¶ 10, 293 P.3d 954. In *Cleveland*, as here, the insurer argued broadly that there was no evidence that its denial of coverage was unfounded or that its investigation was faulty, and the insureds focused on the

insurance company's initial failure to investigate and evaluate the claim. Both parties took their arguments too far in *Cleveland*, and both parties do the same here.

**{16}** "[A]n insurer has a right to refuse a claim without exposure to a bad faith claim if it has reasonable grounds to deny coverage." *Id.* ¶ 13. A reasonable ground is in turn dependent of a reasonable investigation of the claim. *Id.* An investigation need not be "perfect," but it must be reasonably appropriate under the circumstances. *Id.* UJI 13-1702 NMRA reflects our case law in its listing of the circumstances in which insurer bad faith can occur, including failing to promptly evaluate or investigate a claim and refusing to pay for frivolous or unfounded reasons. Reflecting the facts and holding in *O'Neel v. USAA Insurance Co.*, 2002-NMCA-028, ¶ 9, 131 N.M. 630, 41 P.3d 356, UJI 13-1702 also provides that "[a]n insurer may act in bad faith in its handling of a claim even if the policy provides no coverage for that claim."

**{17}** USAA overstates its position and the law of bad faith when it asserts—citing *OR&L Constr., L.P. v. Mountain States Mutual Casualty Co.*, 2022-NMCA-035, ¶¶ 34, 35, 514 P.3d 40—that "once an insurer has determined there is no coverage, the insurer has done all the investigation it need do." *OR&L* is distinguishable in that the insured admitted that it had used the "torch-down" construction method that was specifically excluded from the policy. *Id.* ¶ 5. After the insured's admission, the insurer obviously had no reason to investigate further. *Id.* ¶ 35. More importantly, USAA's argument is directly contrary to *Cleveland.* There, the verdict of bad faith was upheld in part on evidence that the insurer refused to reconsider its initial decision that there was no coverage even after the dismissal of the criminal drag racing charge—the reason coverage was denied in the first instance. *Cleveland*, 2013-NMCA-013, ¶¶ 21-23. As such—as a facet of their duty to conduct a fair and reasonable investigation—insurers do have a continuing duty to investigate in light of new evidence and circumstances.

**{18}** We turn now to Plaintiffs' arguments. Seizing on the concept that bad faith can be "based on conduct separate from the insurer's refusal to pay," Plaintiffs argue that even if the summary judgment is upheld with regard to coverage, they still have a viable claim for USAA's failure to properly investigate Tatiana's claim. *Haygood v. United Servs. Auto. Ass'n*, 2019-NMCA-074, ¶ 20, 453 P.3d 1235 (alterations, internal quotation marks, and citation omitted). Plaintiffs rely on the following facts.

**{19}** The accident occurred March 9. The next day, Tatianna's father Anthony reported the incident to USAA. The day after, Hawken spoke to Anthony and advised him she would be handling the claim. During that conversation, he told her that a pedestrian was identified as the person who tried to cross the four-lane highway the night of the collision. Hawken informed Anthony that UM coverage would be extended during this conversation. That same day Hawken sent Perlinksi an email indicating that Tatianna's vehicle would be covered by UM coverage.

**{20}** On April 22, Hawken received a copy of the supplementary police report. The report concluded that pedestrian error was the cause of the accident. The supplementary report identified only two witnesses. That day Hawken requested the full

investigative report. Two days later Hawken indicated in her claim file that her analysis was complete and she made a liability assessment. At that point, USAA had not conducted any interviews of any witnesses. On June 10, Plaintiffs' counsel sent a demand letter to USAA for UM coverage. On June 15, Hawken contracted with Morse—an outside firm—to investigate the claim. On June 16, Hawken requested the full police report and other information such as police photographs and witness interviews. She also called and left a message for one of the officers listed in the supplementary police report. Two days later Hawken spoke with her supervisor and the two decided that a declaratory judgment action was needed, and Hawken also assigned the claim to Morse to do an independent investigation and get in-person statements from witnesses. USAA filed for a declaration judgment on June 24. All of Morse's investigation occurred after USAA filed for declaratory judgment. Morse interviewed Melchor and Dadey separately on June 26. Morse submitted a preliminary report to Hawken on July 1. Morse submitted additional reports to Hawken on August 17 and September 16 indicating that it had not received the police records it had requested during its investigation. USAA noted they had not received these records as of September 16. Plaintiffs contrast this series of events with their attorney's ability to obtain the entire police report by June 18, and 911 audio files in November 2021.

**{21}** In summary, Plaintiffs argue that USAA came to its determination that there was no coverage after it received only part of the available police reports and with no further investigation. Based on this series of events, Plaintiffs argue that they should be allowed to go to trial because USAA made its coverage decision and sought a declaratory judgment against its insured prematurely without conducting a fair and reasonable investigation into whether the negligence of other drivers was among the causes of the accident. Plaintiffs' argument overstates the import of the holdings in *O'Neel* and *Haygood*.

**{22}** In *O'Neel*, 2002-NMCA-028, ¶ 2, the plaintiff submitted a claim under his renter's insurance policy following the burglary of a home he was building. After a lengthy investigation, the insurance company denied the claim because it concluded that plaintiff had consciously overvalued his claim. *Id.* The plaintiff then filed an action to recover damages for bad faith breach of an insurance contract and unfair insurance claims practices. *Id.* ¶ 3. After a trial, the jury awarded the plaintiff $2,500 in compensatory damages—less than his original claim—but also found that USAA had acted in bad faith and had engaged in unfair insurance practices. *Id.* ¶ 3. The insurance company argued that it was inconsistent for the jury to find that the insurance company breached the insurance contract in bad faith and engaged in unfair claims practices while awarding compensatory damages less than what he valued his claim at. *Id.* ¶ 6. After determining that the evidence suggested the plaintiff's overvaluation of his claim could have been a product of mistake and inadvertence, not intentional misrepresentations, *id.* ¶ 8, this Court affirmed stating that "the record contains evidence to support a finding of bad faith against [the insurance company] based on conduct *separate* from [the insurance company]'s refusal to pay [the plaintiff] the full amount of the claim originally submitted to [the insurance company]." *Id.* ¶ 9 (emphasis

added). There is no evidence in the record of any actionable conduct separate from the coverage issue—as we conclude above—that was properly resolved in favor of USAA.

**{23}** *Haygood* involved an uninsured motorist claim arising from an incident in which the plaintiff was assaulted outside a residence by an assailant who accused the plaintiff of breaking into his car. 2019-NMCA-074, ¶ 2. The insurance company refused coverage of the claim and the plaintiff sued. *Id.* ¶ 4. The district court dismissed the action, ruling that use of a gun precluded coverage because as a matter of law it was not the kind of "normal use" of a vehicle required for coverage. *Id.* ¶ 5. The district court also dismissed the plaintiff's bad faith claims, concluding that they depended entirely on the presence of coverage. *Id.* The opinion contains few details about the basis for the bad faith claims. This Court affirmed dismissal of the bad faith claim premised on the mere failure to pay a covered claim for the obvious reason that it had already affirmed dismissal of the contract claim. *Id.* ¶ 24. However, this Court reversed on the plaintiff's theory of bad faith based on the assertion that the insurance company "intentionally delayed the coverage decision, intentionally failed to fairly evaluate the claim, and dishonestly handled the claim to their advantage." *Id.* ¶ 22 (alteration and internal quotation marks omitted). The opinion provides no details or guidance as to the viability of the claim, holding simply that the district court's ruling had been too broad. *Id.* ¶ 24. Thus, the opinion does no more than say that conduct separate from a refusal to pay may support a bad faith claim even in the absence of a contractual right to coverage. *Id.*

**{24}** This case is different in that the record is sufficient to provide a complete view of what might be presented to a jury, and, based on the developed record, we agree with the district court that summary dismissal of the contractual claim is correct. At the hearing on USAA's motion for summary judgment, the district court stated, "In this case, all evidence that I received and that is in the record on summary judgment indicates that the investigation, while perhaps not absolutely exhaustive, was reasonable under these circumstances. And it was not unreasonable or bad faith for the company to conclude that in fact, it was a pedestrian caused accident for which there is no coverage and that its decision, admittedly not its immediate decision, but its correct decision, was accurate and appropriate. I don't have facts in this record that controvert that and create a genuine issue of material fact." In essence, the district court determined that there was no genuine issue of material fact that USAA's investigation was reasonable in light of all the facts in the record—including facts and circumstances occurring and brought to light after USAA made its coverage decision in April 2020. We agree with the district court that this was a reasonable investigation, that Tatianna was ultimately not entitled to UM coverage, and that Plaintiffs fail to establish a genuine issue of material fact on the issue.

## V.    Plaintiffs' Remaining Claims Were Properly Dismissed

**{25}** Plaintiffs next argue that the district court erred by dismissing the entire case when USAA's motion for summary judgment addressed only certain issues.

**{26}** The burden is on the appellant to clearly demonstrate that the trial court erred. *Farmers, Inc. v. Dal Mach. & Fabricating, Inc.*, 1990-NMSC-100, ¶ 8, 111 N.M. 6, 800 P.2d 1063. "This Court has no duty to review an argument that is not adequately developed." *Corona v. Corona*, 2014-NMCA-071, ¶ 28, 329 P.3d 701. Plaintiffs fail to list which claims they assert remain active. In fact, they literally make no arguments regarding which claims survive or why, which hinders our review. Based on this failure, Plaintiffs have failed to meet the burdens to present the issue or demonstrate error.

**{27}** Based on this decision, we need not address Plaintiffs' claims regarding Kathleen's status as a proper plaintiff to the action.

**CONCLUSION**

**{28}** We affirm.

**{29} IT IS SO ORDERED.**

**MICHAEL D. BUSTAMANTE, Judge,**
**Retired, Sitting by designation.**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**ZACHARY A. IVES, Judge**