# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2013-NMCA-013

Filing Date: November 21, 2012

Docket No. 30,164

AMERICAN NATIONAL PROPERTY
AND CASUALTY COMPANY,

   Plaintiff/Counter-Defendant-Appellant,

v.

TINA CLEVELAND and ADAM HUDSON,

   Defendants/Counter-Plaintiffs-Appellees.

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Beatrice J. Brickhouse, District Judge

Montgomery & Andrews, P.A.
Paul E. Houston
Brian T. Judson
Albuquerque, NM

Jaime R. Kennedy
Santa Fe, NM

for Appellees

Tucker Law Firm, P.C.
Steven L. Tucker
Santa Fe, NM

James C. Ellis
Albuquerque, NM

for Appellant

## OPINION

**CASTILLO, Chief Judge.**

1

**{1}** In this claim dispute, insurer American National Property and Casualty Company (ANPAC) does not challenge the judgment against it finding breach of contract and requiring it to pay the insurance claim filed by Defendants. Rather, ANPAC seeks reversal of two awards based on the allegation of bad faith denial of the claim: $20,000 in compensatory damages and $50,000 in punitive damages. ANPAC argues that its motion for directed verdict on the bad faith claim should have been granted because the claim was not supported by substantial evidence and did not reach the legal threshold for bad faith under New Mexico law. ANPAC also challenges the admission of testimony offered by Defendants' expert witness. We affirm.

## I. BACKGROUND

**{2}** This case arises from an automobile collision that took place in the early morning hours of October 13, 2007. Albuquerque Police Officer Matthew McElroy was parked in his squad car in the median on southbound Jefferson Street Northeast, pointing his radar gun toward oncoming traffic when he saw two vehicles headed toward him. One of the vehicles, a 1986 Porsche 944 Turbo, was driven by Defendant Adam Hudson, who lost control at the curve and slammed into the back of Officer McElroy's squad car. The other car, thought to be a black Lincoln LS, sped on southward, its driver never identified.

**{3}** There was a police investigation and report by Officer Compton after which Hudson was charged with drag racing and reckless driving. Hudson's mother, Co-Defendant Tina Cleveland, co-signed on the loan for the Porsche and was a named insured on the ANPAC policy. After the accident, Defendants promptly filed a claim with ANPAC. Two days after the collision, the claim was assigned to adjuster Evan Williams, who reviewed the police report and recorded an interview with Hudson. The policy contained language excluding coverage for accidents "resulting from the use of your insured car in or in preparation for any race, speed contest, hill climbing exhibition, or any other contest or demonstration." Williams contacted Defendants to let them know that additional investigation was needed regarding their claim because of the racing exclusion in the policy.

**{4}** Two weeks later, on October 30, 2007, Williams brought the claim before ANPAC's claims committee. The committee requested further investigation, and Williams later obtained a recorded statement from investigating Officer Compton. On December 20, 2007, the claims committee met again, this time with a notarized statement from Hudson who denied drag racing and a recorded statement from Officer Compton who explained that Hudson had originally denied drag racing but then admitted it. The committee denied the claim on the basis of the racing exclusion. In early March 2008, Williams was informed that the racing charge against Hudson had been dismissed. Williams presented that new information to the claims committee later that month, and it determined that the denial of the claim "will stand based upon the exclusion for racing under your policy" and "Officer Compton's statement that Adam did indeed admit to racing a black Lincoln LS."

**{5}** Defendants brought suit against ANPAC in Metropolitan Court, and ANPAC filed

this action in district court seeking a declaratory judgment stating it had no duty to provide coverage under the language and terms of the policy. Defendants countersued for breach of contract, breach of the covenant of good faith and fair dealing, and three other claims that eventually were dismissed. After a three-day trial, a jury decided that Hudson was not racing and returned a verdict against ANPAC, finding that the insurer breached its contract with Defendants and awarding Defendants $8,260.08 in damages. The jury also found that ANPAC had acted in bad faith and awarded $20,000 in additional compensatory damages; it also found that the bad faith was the result of malicious and/or willful and wanton actions on the part of ANPAC and awarded $50,000 in punitive damages.

**{6}** ANPAC filed this appeal. It raises no issues as to the breach of contract claim and limits its challenge to the two awards based on bad faith. We first address ANPAC's contention that it was error for the district court to deny its motion for directed verdict on the bad faith claim. Then we will address ANPAC's second claim that the court abused its discretion in allowing the opinion evidence of Defendants' expert witness. Finally we will address the award of attorney fees and costs.

## II.     DISCUSSION

### A.     Motion for Directed Verdict

### 1.     Arguments of the Parties

**{7}** ANPAC argues that the district court should have granted its motion for directed verdict on the bad faith claim as a matter of law. A motion for directed verdict, also referred to as judgment as a matter of law, is governed by Rule 1-050 NMRA. Our Supreme Court has cautioned that judgment as a matter of law "is a drastic measure that is generally disfavored inasmuch as it may interfere with the jury function and intrude on a litigant's right to a trial by jury." *Torres v. El Paso Elec. Co.*, 1999-NMSC-029, ¶ 26, 127 N.M. 729, 987 P.2d 386, *overruled on other grounds by Herrera v. Quality Pontiac*, 2003-NMSC-018, 134 N.M. 43, 73 P.3d 181. "In ruling upon and reviewing a motion for a directed verdict, the court must consider all of the evidence. If there are conflicts or contradictions, they must be resolved in favor of the party resisting the motion." *Hicks v. Eller*, 2012-NMCA-061, ¶ 16, 280 P.3d 304 (internal quotation marks and citation omitted). Therefore, judgment as a matter of law shall be granted "only when there are no true issues of fact to be presented to a jury," and it is clear that the facts and inferences are so "overwhelmingly in favor of the moving party that the judge believes that reasonable people could not arrive at a contrary result." *McNeill v. Rice Eng'g & Operating, Inc.*, 2003-NMCA-078, ¶ 31, 133 N.M. 804, 70 P.3d 794 (internal quotation marks and citation omitted). Whether there is sufficient evidence to support a claim or defense is a question of law that we review de novo. *Id.*

**{8}** ANPAC's position is that because its policy unambiguously excluded coverage for drag racing and because there was conflicting evidence as to whether Hudson was drag racing, there was a reasonable question as to coverage and, consequently, ANPAC's decision

to deny coverage could not be considered frivolous or unfounded as a matter of law. Defendants contend that the racing exclusion in the ANPAC policy applies to pre-arranged racing and not to impromptu drag racing. They also argue that even if the exclusion does apply to impromptu drag racing, there was substantial evidence that ANPAC breached its duty to conduct a fair investigation before denial of the claim, thus allowing the jury to find that the denial of the claim was frivolous and unfounded. As to punitive damages, Defendants argue that evidence sufficient to support the submission of bad faith is sufficient to support the submission of the issue of punitive damages. In its reply, ANPAC points to the jury instructions as a basis for its contention that the failure to fairly investigate the claim is contrary to the law of the case and that the only issue before the jury was whether ANPAC's denial of the claim was "for reasons [that] were frivolous or unfounded."

**2.      Policy Exclusion**

**{9}**      We begin with the policy exclusion. For purposes of this Opinion, we will assume without deciding that ANPAC's policy excluded coverage for drag racing. The jury instructions required the jury to determine whether Hudson was engaged in a race at the time of the collision. The jury answered no. In other words, whether there was an exclusion or not became a non-factor for this part of the case. While Defendants contend that ANPAC's interpretation of the insurance contract to exclude coverage for drag racing was an example of bad faith, we need not reach this argument because we decide that there was sufficient evidence for the jury to find bad faith based on the manner in which the investigation was conducted. Consequently, we make our assumption that there was an exclusion because it does not affect the outcome of the case.

**3.      Bad Faith Claim**

**{10}**      The parties argue about two bases for bad faith. ANPAC focuses on the reasons for denial of coverage and argues that there is no evidence to support the finding that the reasons for denial were frivolous or unfounded. Defendants center their argument on events before the actual denial and contend that the bad faith claim flowed directly from ANPAC's breach of duty to fairly investigate and evaluate the claim.

**{11}**      We agree with ANPAC that in New Mexico, an insurer acts in bad faith when it denies a first party claim for reasons that are frivolous or unfounded. *See Sloan v. State Farm Mut. Auto. Ins. Co.*, 2004-NMSC-004, ¶¶ 3, 18, 135 N.M. 106, 85 P.3d 230. "Unfounded" is defined not as "erroneous" or "incorrect[,]" but rather the failure to exercise care for the interests of the insured, an arbitrary or baseless refusal to pay, lacking support in the language of the policy or the circumstances of the claim. *Id.* ¶ 18 (internal quotation marks and citation omitted). "Unfounded" is synonymous with "frivolous." *Id.* (internal quotation marks and citation omitted).

**{12}**      The term has been more specifically defined:

4

"Unfounded" in this context does not mean "erroneous" or "incorrect"; it means essentially the same thing as "reckless disregard," in which the insurer "*utterly* fail[s] to exercise care for the interests of the insured in denying or delaying payment on an insurance policy." It means an utter or total lack of foundation for an assertion of nonliability—an arbitrary or baseless refusal to pay, lacking any arguable support in the wording of the insurance policy or the circumstances surrounding the claim.

*Jackson Nat'l Life Ins. Co. v. Receconi*, 113 N.M. 403, 419, 827 P.2d 118, 134 (1992) (citation omitted).

### 4.      Fair Investigation and Evaluation of the Claim

**{13}**    As we have discussed, an insurer has a right to refuse a claim without exposure to a bad faith claim if it has reasonable grounds to deny coverage. *See Jessen v. Nat'l Excess Ins. Co.*, 108 N.M. 625, 627, 776 P.2d 1244, 1246 (1989), *limited on other grounds by Sloan*, 2004-NMSC-004. "[A]n insurer has a right to refuse a claim without exposure to punitive damages if it has *a reasonable ground* to believe a meritorious defense exists to the claim." *Jessen*, 108 N.M. at 627, 776 P.2d at 1246 (emphasis added). Logic suggests that such a reasonable ground flows from a reasonable investigation of the claim. "[A]n insurance company is justified in taking reasonable time and measures necessary to establish which party is entitled to the proceeds." *State Farm Gen. Ins. Co. v. Clifton*, 86 N.M. 757, 759, 527 P.2d 798, 800 (1974). This conclusion is supported by UJI 13-1702 NMRA, which directs that "[i]n deciding whether to pay a claim, the insurance company must act reasonably under the circumstance to conduct a timely and fair [investigation] [and] [evaluation] of the claim." The insurer's investigation does not need to be perfect, but "reasonably appropriate under the circumstances." *Sims v. Great Am. Life Ins. Co.*, 469 F.3d 870, 891 (10th Cir. 2006) (internal quotation marks and citation omitted). To be liable for bad faith, the insurer must lack a founded belief, and the founded belief is absent when the insurer fails to undertake an investigation adequate to determine whether its position is tenable. *See Filasky v. Preferred Risk Mut. Ins. Co.*, 734 P.2d 76, 82 (Ariz. 1987).

**{14}**    ANPAC differentiates between unreasonableness during the investigation of the claim, a "fair investigation" theory, and unreasonableness in denying the claim based on reasons that are frivolous or unfounded. Relying on a number of cases, ANPAC argues that Defendants did not present the "fair investigation" theory to the jury, and because the jury instructions become the law of the case, Defendants cannot prevail on the theory that was never properly presented to the jury. *See Haaland v. Baltzley*, 110 N.M. 585, 588, 798 P.2d 186, 189 (1990) ("[The] stipulation of the parties, together with the theory of the case as submitted to the jury under jury instructions, became the law of the case, binding upon the parties to the controversy."); *Hinger v. Parker & Parsley Petroleum Co.*, 120 N.M. 430, 438, 902 P.2d 1033, 1041 (Ct. App. 1995) (analyzing the appeal solely in terms of the theories of negligence that were actually submitted to the jury); *see also Fleetwood Retail Corp. of N.M. v. LeDoux*, 2007-NMSC-047, ¶ 33, 142 N.M. 150, 164 P.3d 31 (noting that the

5

instructions become the law of the case); *State v. Hurst*, 34 N.M. 447, 449, 283 P. 904, 904 (1929) (holding that once a party acquiesces in the theory of the case as presented by the jury instructions, that party cannot, after the verdict, shift its position and change the theory of the case).

**{15}** We agree with ANPAC on the law but disagree with its conclusion as applied to the facts of this case. Chapter 17 of New Mexico's uniform jury instructions deals with insurance bad faith claims. Bad faith failure to pay a first party claim is governed by UJI 13-1702. The following modified version of this instruction was tendered by ANPAC and given to the jury, marked as Jury Instruction No. 12:

> An insurance company acts in bad faith when it refuses to pay a claim of the policyholder for reasons which are frivolous or unfounded. An insurance company does not act in bad faith by denying a claim for reasons which are reasonable under the terms of the policy.
>
> In deciding whether to pay a claim, the insurance company must act reasonably under the circumstances to conduct a timely and fair investigation and evaluation of the claim.

The jury was also given UJI 13-1705 NMRA, marked as Jury Instruction No. 13:

> Under the "bad faith" claim, what is customarily done by those engaged in the insurance industry is evidence of whether the insurance company acted in good faith. However, the good faith of the insurance company is determined by the reasonableness of its conduct, whether such conduct is customary in the industry or not. Industry standards are evidence of good or bad faith, but they are not conclusive.

**{16}** The special verdict form contained ten questions, five of which related to the bad faith claim. The jury was asked if ANPAC's refusal to pay their claim was based on "reasons which were frivolous and unfounded." If the answer to that question was answered in the affirmative by the jury, it was directed to go on to the subsequent questions. The remaining questions dealt with cause of damages, amount of damages, if punitive damages should be awarded and, if so, the amount.

**{17}** "[W]e must consider the instructions as a whole to determine whether all issues of fact and law were fairly and accurately presented to the jury." *O'Neel v. USAA Ins. Co.*, 2002-NMCA-028, ¶ 26, 131 N.M. 630, 41 P.3d 356. While the special verdict form asks only whether the refusal to pay the claim was based on "reasons which were frivolous and unfounded," Jury Instruction No. 12 includes both theories and could have been read by the jury to mean that acting unreasonably under the circumstances when investigating and evaluating a claim could also result in a denial of the claim for reasons that are frivolous or unfounded. We therefore conclude that the instructions taken as a whole support both

6

theories of bad faith. *Hourigan v. Cassidy*, 2001-NMCA-085, ¶¶ 26-27, 131 N.M. 141, 33 P.3d 891 (looking to the instructions as a whole and finding no error in a special verdict form without a causation question when the issue of causation was covered by other jury instructions).

**{18}**   We now return to our first question:  Was there evidence presented to support Defendants' theory that ANPAC acted in bad faith by denying Defendants' claim such that there was no error in the court's denial of ANPAC's motion for directed verdict?  As a preliminary matter, we note that ANPAC's motion made at the end of trial was for a directed verdict on all issues.  As to the bad faith claim, ANPAC pointed to the expert's testimony characterizing the case as borderline and explained that "on that basis alone, [ANPAC] would suggest [Defendants] have failed to carry their burden of proof with regard to the bad faith claim."  The remainder of the argument in support of the motion dealt with the issues of violation of the New Mexico Insurance Code, the Unfair Practices Act, and the breach of contract.  ANPAC did not argue the meaning of "frivolous or unfounded" or make other arguments that are part of the briefing in their challenge to the verdict finding bad faith in this case.  When the district court granted ANPAC's motion as to all issues except breach of contract and bad faith, it explained its ruling as follows:

> As far as the bad faith and breach of contract claims, I do find that those claims should go to the jury.  I think reasonable minds could differ.  I think that it's possible, based upon the evidence that the jury has heard, they could certainly find, either way, that there was a breach of contract, but it wasn't bad faith, or they could find that there was no breach of contract, or they could find that there was a breach of contract and there was bad faith. I think reasonable minds could certainly differ on those issues, based upon the testimony that has been brought to light.

**{19}**   ANPAC argues that by ruling that reasonable minds could differ about whether the claim should have been denied, the court was really concluding that the matter was fairly debatable; and the insurer should have been entitled to judgment as a matter of law that any denial was not a result of bad faith.  We do not read the court's explanation to relate to a denial; rather, we understand the court to be saying that the evidence presented was sufficient to support both the breach of contract and bad faith claims and that reasonable minds could differ as to whether liability should be imposed on either based on that evidence.  We now review the evidence presented.

**{20}**   At trial, Defendants' expert testified that an insurance company must be motivated by "honesty, good faith, and fair dealing" and that in this case, ANPAC "favored their own interests over the interests of the insured, [and] paid little or no attention to what [Hudson] was telling them."  He went on to testify that ANPAC failed to ask Hudson "the obvious question, 'Were you racing?'"

**{21}**   The expert acknowledged that, up until the charges were dropped against Hudson,

7

a denial of the claim would not have been frivolous or unfounded, but that once the charges were dropped, the claim committee should have given the case "a completely brand new visitation"; instead the committee "continued with the [same] approach that they had taken." ANPAC argues that the dismissal of Hudson's criminal drag racing charge is irrelevant to the question of whether it acted in bad faith. Relying on *Suggs v. State Farm Fire & Casualty Co.*, 833 F.2d 883, 891 (10th Cir.1987), ANPAC points out that the decision to prosecute is based on different criteria than those applied in civil cases and that the dismissal of the charge did not change the underlying facts giving rise to the accident. We agree generally with ANPAC's proposition; however, we understand the expert to be focusing on the manner in which ANPAC evaluated and investigated the claim and the standards he expected the insurance company to follow. The expert opined that ANPAC acted contrary to industry standards by not considering the "rights and interests of the insureds," by failing to "give [Hudson's] affidavit much integrity," by not asking the right questions, and lastly by failing to provide reasonable standards for adjusting the claims. When asked about the fact that the claim had been reviewed three times by ANPAC's claims committee, the expert stated that he was more concerned with "substance than process" and explained that instead of just giving the reason for the denial as "drag racing," he expected to see demonstrations of how the committee decided the question, how it weighed the evidence, and how it arrived at its conclusion.

**{22}** The expert also expressed concern that the file indicated that Hudson "was drag racing another vehicle" as opposed to "was accused of drag racing." According to the expert, insurance companies are usually careful enough to say it is an accusation and that if "you say it as a fact, the investigation should be complete." The expert noted that at that point the investigation was not complete, thus implying that the claim committee had made up its mind before collecting all of the evidence. The expert testified that the claim committee did not do a proper evaluation of the claim and looked "at one-sided evidence, one-sided information" and did not give "even-handed consideration of the rights and interests of the insured[.]"

**{23}** We view the facts and all reasonable inferences in the light most favorable to the party resisting the motion for a directed verdict. *Gonzales v. Surgidev Corp.*, 120 N.M. 133, 145, 899 P.2d 576, 588 (1995). With this as our standard, we conclude that there was evidence sufficient to have the question of bad faith go to the jury and that the district court did not err in denying ANPAC's motion for summary judgment.

## 5. Punitive Damages

**{24}** Now we turn to the punitive damages issue. ANPAC makes no separate argument regarding the award of punitive damages and appears to rely on its primary argument that a directed verdict should have been granted as to bad faith and that would then subsume any issue regarding punitive damages. There was no separate argument regarding punitive damages when ANPAC made its motion for directed verdict. And ANPAC made no objection to the jury instructions regarding punitive damages. Additionally, at oral argument

8

ANPAC stated that it could not legally distinguish the bad faith claim from the punitive damages claim, that the evidence presented was insufficient to support the bad faith claim and, therefore, since the tort fails, all the other damages including punitive damages, attorney fees, and costs fail as well. We have affirmed the judgment as to the bad faith claim; accordingly, ANPAC provides us with no argument on which to reverse the punitive damages award.

## B. Expert Testimony

**{25}** We now turn to ANPAC's contention that the district court erred in allowing the testimony of Defendants' expert. ANPAC argues that Defendants failed to comply with the district court's scheduling order and failed to disclose the substance and grounds for the expert's proposed testimony. ANPAC notes that Defendants never provided an expert report and only belatedly offered an affidavit and curriculum vitae from the expert attached to Defendants' opposition to ANPAC's motion for summary judgment.

**{26}** It is the district court's role to "decide any preliminary question about whether a witness is qualified" to testify at trial. Rule 11-104 NMRA. Further, Rule 11-702 NMRA states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.

*See State v. Torres*, 1999-NMSC-010, ¶ 45, 127 N.M. 20, 976 P.2d 20 (noting that "a witness must qualify as an expert in the field for which his or her testimony is offered before such testimony is admissible"). "In determining whether an expert witness is competent or qualified to testify, the [district] court has wide discretion . . ., and the court's determination of this question will not be disturbed on appeal, unless there has been an abuse of this discretion." *Lopez v. Reddy*, 2005-NMCA-054, ¶ 14, 137 N.M. 554, 113 P.3d 377 (internal quotation marks and citation omitted). "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. A [district] court abuses its discretion by its ruling only if we can characterize it as clearly untenable or not justified by reason." *Coates v. Wal-Mart Stores, Inc.*, 1999-NMSC-013, ¶ 36, 127 N.M. 47, 976 P.2d 999 (internal quotation marks and citations omitted).

**{27}** ANPAC filed a pre-trial motion in limine asking the court to prohibit the expert from testifying. ANPAC argued that Defendants submitted a witness list that did not include the expert's professional qualifications or a summary of his anticipated testimony. When the information was provided after a court-imposed deadline had expired, ANPAC told the district court that it had been prejudiced by the delay. Further, ANPAC contended that the bases provided for the expert's anticipated testimony were inadequate and filled with

conclusory statements.

**{28}** The expert's affidavit recounted his background and experience and indicated that he had reviewed the pleadings, documents, and depositions in the case. Among the contentions in his affidavit:

> 12. [ANPAC's] denials of the claims . . . were unreasonable, contrary to generally accepted insurance industry practices, and meet the New Mexico test for bad faith conduct.
>
> . . . .
>
> 17. Customary industry practices are relevant evidence of [a] bad faith claim.
>
> . . . .
>
> 25. In order to meet its burden of proving that the exclusion applies, [ANPAC] must show that a race or speed contest existed at the time of the accident.
>
> . . . .
>
> 34. Despite the fact that [ANPAC's] assumption that a race was underway at the time of the accident deteriorated with the passage of time as evidenced by the fact that drag racing charges against . . . Hudson were dropped, [ANPAC] refused to alter its self-serving interpretation of . . . Hudson's conduct.

ANPAC faults the district court for allowing the expert to testify when he had not properly stated ANPAC's own standards for the investigation and processing of claims, how ANPAC failed to meet those standards, and how ANPAC's actions differed from industry standards. We disagree. ANPAC is expecting a level of specificity from the affidavit not required by rule or our jurisprudence. Our Supreme Court has noted that under Rule 11-702, "[t]he description of the kinds of testimony requiring expertise is broad, and so are the means to qualify a witness as an expert: What is required is knowledge, skill, experience, training, or education." *Torres*, 1999-NMSC-010, ¶ 45 (internal quotation marks and citation omitted). In addition, ANPAC failed to show on appeal how it was prejudiced by the expert's affidavit when neither the affidavit nor the opinions expressed therein were presented as evidence at trial. Nor has it shown how it was prejudiced by the time delay when it had been furnished with the expert's affidavit more than a month before the start of trial and a month after the close of discovery. (Defendants contend that the expert could not disclose his proposed testimony until discovery was complete and he had received copies of pertinent depositions. Defendants also point out that ANPAC's counsel, eight months

10

before trial, expressed familiarity with the expert and the expected content of his expert testimony.)

**{29}** ANPAC also relies on *Shamalon Bird Farm, Ltd. v. U.S. Fidelity & Guarantee Co.*, 111 N.M. 713, 715, 809 P.2d 627, 629 (1991), to suggest that the expert should have been excluded from testifying at trial because he failed to "take[] the time to familiarize himself with the facts" of the case. In *Shamalon*, an insurance bad faith case, the proffered expert had never handled the type of claim in question. *Id.* In addition, "the court found that [the expert] had a poor understanding of the facts of a rather complicated case. He had not taken the time to familiarize himself with the facts, and thus did not have a sufficient basis to give opinions that would be of help to the jury." *Id.* Finally, the court was concerned about the fairness of the proceedings because the expert's opinion and the basis of his testimony "were virtually unknown on the eve of trial." *Id.*

**{30}** In the case before us, by contrast, the proffered expert did not exhibit a similar "total unfamiliarity of the record." The expert swore in the affidavit that he had familiarized himself with the pleadings, documents, and depositions in the case. The expert's affidavit did confuse the racing exclusion by calling it a "speeding exclusion." And while the affidavit did state "it is impossible for a person to race against themselves" when the facts indicated a second driver was involved in the alleged drag race, a closer reading of the affidavit reveals that the expert was referring to the lack of another witness in the case, not the lack of another race participant in the event that gave rise to the claim. Otherwise, it was clear from the affidavit that the expert had decades of experience in examining insurance bad faith cases and had reviewed the pertinent pre-trial documents to familiarize himself with the case.

**{31}** The district court denied the motion in limine regarding the expert testimony and concluded that the expert's testimony would be limited to the issues addressed in his affidavit. The court decided to confine the testimony to ultimate facts and to acceptable industry practices. The court also ordered Defendants to make the expert available for a pre-trial deposition and to bear the costs of a deposition. The district court gave proper consideration to the expert's affidavit in ruling on his qualifications to testify. We cannot say that the district court's decision was "clearly untenable or not justified by reason." *Coates*, 1999-NMSC-013, ¶ 36 (internal quotation marks and citation omitted). We conclude that the district court did not err in denying ANPAC's motion to exclude the testimony of Defendant's expert.

**C.      Attorney Fees and Costs**

**{32}** Section 39-2-1 provides the following:

> In any action where an insured prevails against an insurer who has not paid a claim on any type of first party coverage, the insured person may be awarded reasonable attorney[] fees and costs of the action upon a finding by

the court that the insurer acted unreasonably in failing to pay the claim.

When an award of attorney fees is authorized by statute or otherwise permitted by appellate rules, Rule 12-403(B)(3) NMRA, allows this Court to award "reasonable attorney fees for services rendered on appeal in causes where the award of attorney fees is permitted by law, if requested in the briefs or by motion filed within ten (10) days of entry of disposition." ANPAC asks that we exercise our discretion and deny attorney fees and costs for the appeal in this case because (1) we originally recommended summary reversal before placing the case on the general calendar and (2) this case presents issues of first impression.

**{33}** Because we affirm the judgment in this case, we conclude that Defendants are entitled to attorney fees and costs on appeal. However, the amount must be determined. Accordingly, we remand this matter to the district court to determine reasonable attorney fees and costs for Defendants on appeal. *See id.*

## III.   CONCLUSION

**{34}** For the foregoing reasons, we affirm the judgment of the district court and remand on the sole issue of attorney fees and costs of this appeal.

**{35}   IT IS SO ORDERED.**

_____

**CELIA FOY CASTILLO, Chief Judge**

**WE CONCUR:**

_____

**MICHAEL E. VIGIL, Judge**

_____

**J. MILES HANISEE, Judge**

**Topic Index for *Am. Nat'l. Prop. & Cas. Co. v. Cleveland*, No. 30, 164**

**APPEAL AND ERROR**
Standard of Review
Substantial or Sufficient Evidence

**CIVIL PROCEDURE**
Directed Verdict

**CONTRACTS**

12

Breach

**CIVIL PROCEDURE**
Expert Witness

**EVIDENCE**
Expert Witness

**INSURANCE**
Attorney Fees
Bad Faith
Denial of Coverage
Motor Vehicle Insurance

**REMEDIES**
Punitive Damages