This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**JUDY SANGSTER,**

Plaintiff-Appellee,

and                                                    **No. 33,914**

**CAITLIN ORTIZ, MICHAEL ORTIZ,**
**ESTATE OF STEVEN ORTIZ, by the**
**Personal Representative,**

Involuntary Plaintiffs,

**GREGORY NICK PAUL ORTIZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Manuel I. Arrieta, District Judge**

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Edward Ricco
Albuquerque, NM

for Appellee

Jose Marcos Perales Pina
Las Cruces, NM

for Appellant

**MEMORANDUM OPINION**

**ZAMORA, Judge.**

{1}    Defendant Gregory Nick Paul Ortiz (Ortiz) appeals from an order of the district court distributing certain real and personal property and financial assets after Ortiz and Plaintiff Judy Sangster (Sangster) ended their relationship after nearly thirty years of co-habitation. On appeal Ortiz argues that the district court erred by: (1) failing to give proper effect by way of consolidation or res judicata to a 1998 paternity suit involving the parties, (2) adopting Sangster's proposed findings of fact and conclusions of law, (3) granting relief to Sangster, and (4) granting relief to involuntary plaintiffs Michael and Caitlin Ortiz. For the reasons that follow, we affirm.

{2}    Because this is a memorandum opinion and the parties are familiar with the facts and procedural history of this case, we reserve discussion of the pertinent facts for our analysis.

**The District Court Appropriately Declined to Apply Res Judicata to the 1998 Case or to Consolidate It With the 1999 Case**

{3}    Sangster and Ortiz began their relationship in 1981 when Ortiz moved into Sangster's home. Although the couple never married, they lived together as husband and wife for almost thirty years and had three children together. In 1998 Ortiz moved out of the family home and Sangster initiated a paternity action against him (the 1998 case). The district court entered an order on June 15, 1999 (the 1999 order), resolving the child support issue and acknowledging an agreement between Ortiz and Sangster with regard to property and asset distribution.

2

**{4}** Approximately six months after the conclusion of the paternity suit, Ortiz moved back in with Sangster. In 2010 Ortiz and Sangster splitup again and Sangster commenced this action in an effort to secure, under various legal theories, a share of property held by Ortiz. Separately, Sangster sought to reopen the 1998 case to enforce the child support order.

**{5}** In his motion for summary judgment, Ortiz argued that because the 1998 case involved the distribution of property and assets between him and Sangster, all of Sangster's claims with regard to his property or assets that accrued prior to the1999 order should be precluded under the doctrine of res judicata. But because the 1999 order does not include the terms of the parties' 1999 agreement dividing property and assets, the district court was not able to determine which claims were resolved in the 1998 case. The court declined to apply the doctrine of res judicata to bar any of Sangster's claims, but invited counsel to "get together and decide what it is that is res judicata and file a stipulation" regarding what already had been resolved. It does not appear that any such stipulation was filed, presumably because Sangster agreed that none of her claims in the present case accrued prior to the 1999 order.

**{6}** On appeal Ortiz argues that the district court erred in denying summary judgment by not applying res judicata and requests that this Court reverse the district court with regard to issues decided prior to 1999. We review a district court's

3

determination concerning a res judicata claim de novo. *See Tafoya v. Morrison*, No. 34,465, 2016 WL 6995380, 2016-NMCA-___, ¶ 31, ___ P.3d ___ (Nov. 29, 2016). In the context of claim preclusion, res judicata "precludes a subsequent action involving the same claim or cause of action." *Brannock v. Lotus Fund*, 2016-NMCA-030, ¶ 21, 367 P.3d 888 (internal quotation marks and citation omitted), *cert. denied*, 2016-NMCERT-002, 370 P.3d 1212. The elements of a claim preclusion-based res judicata claim are: "(1) identity of parties or privies, (2) identity of capacity or character of persons for or against whom the claim is made, (3) the same cause of action, and (4) the same subject matter." *Id.* (internal quotation marks and citation omitted). "The party seeking to bar the claim has the burden of establishing res judicata." *Id.* (alteration, internal quotation marks, and citation omitted).

**{7}** In this case, because Ortiz failed to present evidence as to the specific claims resolved in the 1998 case, he failed to meet his burden on several of the elements. We note that Sangster contended that her current claims accrued after 1999. Sangster's prevailing claims accrued in 2005, 2007, and 2008 respectively. Thus, the district court did not err in denying Ortiz's motion as it pertained to the application of res judicata.

**{8}** Ortiz also argues that because the 1998 case resolved many of the claims brought in the present case, the district court erred by failing to consolidate the two

cases. In order to avoid unnecessary costs or delay, a district court may consolidate pending cases when the cases involve a common question of law or fact. *See* Rule 1-042(A) NMRA. "The consolidation of causes of action is a matter vested solely within the discretion of the [district] court." *Five Keys, Inc. v. Pizza Inn, Inc.*, 1982-NMSC-129, ¶ 10, 99 N.M. 39, 653 P.2d 870. "[The appellate courts] will not disturb the [district] court's decision unless there is a clear abuse of that discretion." *Id.*

**{9}** Ortiz does not cite to the record, and we do not find where he moved for consolidation, or otherwise preserved this issue in the district court. *See* Rule 12-213(A)(4) NMRA (requiring appellant to include in the brief in chief "a statement explaining how the issue was preserved in the court below"). To the extent that Ortiz is arguing that the district court erred by failing to sua sponte order consolidation of the two cases, we disagree. *See Vargas v. Clauser*, 1957-NMSC-035, ¶ 15, 62 N.M. 405, 311 P.2d 381 (holding that where consolidation of cases is appropriate, the district court is authorized to consolidate either "on its own initiative or on motion of the plaintiff or defendant"). While the record indicates that Sangster moved to reopen the 1998 case, it is not clear whether the case was pending at the same time this case was pending before the district court. And, as we previously discussed, Ortiz has not shown that the two cases involved common claims that would warrant consolidation.

5

**{10}** Finally, to the extent that Ortiz argues that this Court should remand for findings relating to child support, we decline to do so. Child support was not sought in Sangster's complaint and was not addressed by the district court. There is no issue of child support presently before this Court to be reviewed or remanded. *See Graham v. Cocherell*, 1987-NMCA-013, ¶ 16, 105 N.M. 401, 733 P.2d 370 ("[W]e are a court of review and are limited to a review of the questions that have been presented to and ruled on by the [district] court.").

**Ortiz Failed to Preserve His Argument Involving Sangster's Findings of Facts and Conclusions of Law**

**{11}** Without citation to authority or to the record, Ortiz argues that the district court erred by accepting Sangster's findings of fact and conclusions of law, which were filed beyond the submission deadline. Again, Ortiz does not cite to the record, and we will not search the record to find where he objected to the requested findings of fact and conclusions of law, moved to strike the pleading, or otherwise preserved this issue in the district court. *See* Rule 12-213(A)(4) (requiring appellant to include in the brief in chief "a statement explaining how the issue was preserved in the court below"). Thus, Ortiz has failed to preserve this issue for our review. *See Woolwine v. Furr's, Inc.*, 1987-NMCA-133, ¶ 20, 106 N.M. 492, 745 P.2d 717 ("To preserve an issue for review on appeal, it must appear that appellant fairly invoked a ruling of the [district] court on the same grounds argued in the appellate court. Where the record fails to

6

indicate that an argument was presented to the court below, unless it is jurisdictional in nature, it will not be considered on appeal." (citations omitted)).

{12}     We also reject Ortiz's contention that the district court erred in adopting Sangster's findings of fact and conclusions of law verbatim. Our review of the record reveals this assertion to be incorrect and reveals instead, the district court, in large part, rejected Sangster's requested findings.

**Judgment in Favor of Sangster**

{13}     Between 1992 and 2004, excluding the brief separation in 1998 or 1999, the couple lived in a home referred to as the Grover house. The Grover house was purchased in approximately 1992 by Sangster in her own name with her own funds. In 2004 Ortiz and Sangster moved to a new home, referred to as the Council Oak Road house.

{14}     In 2007 Sangster sold the Grover house for approximately $120,000. Sangster gave Ortiz the proceeds from the sale of the Grover house, which Ortiz paid toward the mortgage on the Council Oak Road house. According to Sangster, Ortiz promised to add her name to the deed on the Council Oak Road house. However, Ortiz never added Sangster's name to the Council Oak Road deed. According to Sangster, the couple purchased furniture for the Council Oak Road house together using their combined funds.

{15} The couple also bought automobiles for her and the children, including a 2005 Pontiac Bonneville (the Pontiac), which Sangster drove. In 2008 Ortiz gave Sangster approximately $26,000 to buy out her retirement (the retirement money); and in 2009 Ortiz loaned Sangster and her sisters money to pay legal fees arising from the probate of Sangster's mother's estate (the Lawson Estate).

{16} In her complaint in the present action, Sangster asserted a right to share in the real and personal property and financial assets to which she alleged she had contributed during the course of her relationship with Ortiz, but were held solely in Ortiz's name. She advanced legal theories of dissolution of domestic partnership, unjust enrichment, fraud, intentional infliction of emotional distress, and common-law marriage. The trial court later granted summary judgment on the common-law marriage claim, and Sangster withdrew her claims for fraud and intentional infliction of emotional distress.

{17} Almost sixteen months after the three-day trial in October 2012 the district court entered its findings of fact and conclusions of law. The district court generally rejected Sangster's claim that she was entitled to a one-half share of all of Ortiz's assets. With respect to the Council Oak Road house and furnishings, the court found that Ortiz and Sangster had entered into an implied contract or joint venture to jointly own and share in the property, and concluded that Sangster was entitled to a one-half

share of the appraised value of the Council Oak Road house, including its furnishings. The court further concluded that, "[i]n the absence of an implied contract or joint venture recovery, Ortiz would be unjustly enriched with the contributions made to the Council Oak[ Road] house by Sangster." With regard to the Pontiac and the retirement money, the court found that both were gifts, which Sangster was entitled to retain.

{18} On appeal Ortiz does not challenge the district court's finding that he and Sangster "entered into an implied contract to jointly own and share the Council Oak[ Road house] and its furnishings as a family unit," or that he and Sangster agreed to "combine their money, property[,] or time in the investment and to share in the profits and losses of the venture jointly, with each having the right of mutual control over the Council Oak[ Road house] property" Consequently, those findings are binding on appeal. *See Morrissey v. Krystopowicz*, 2016-NMCA-011, ¶ 22, 365 P.3d 20.

{19} Ortiz argues that the amount Sangster owed him for the Pontiac, the retirement money, and the Lawson Estate litigation should have offset a portion of the judgment against him. However, Ortiz fails to "identif[y] with particularity the fact or facts that are not supported by substantial evidence." Rule 12-213(A)(4). Although Ortiz's argument is not entirely clear, he appears to challenge the district court's findings that the Pontiac and the retirement money were gifts to Sangster, as well as the court's refusal to adopt his requested findings regarding the expenses of the Lawson Estate

litigation. In doing so, Ortiz has presented a one-sided view of the evidence that ignores the evidence supporting the district court's findings that are adverse to him, contrary to Rule 12-213(A)(3).

**{20}** We review the district court's findings of fact "under a substantial evidence standard." *Bank of New York v. Romero*, 2014-NMSC-007, ¶ 18, 320 P.3d 1. Substantial evidence is "relevant evidence that a reasonable mind could accept as adequate to support a conclusion." *Id.* (internal quotation marks and citation omitted). We will "resolve all disputed facts and indulge all reasonable inferences in favor of the [district] court's findings." *Id.* (internal quotation marks and citation omitted). The district court's findings will be reversed "only if the [district] court has clearly abused its discretion. An abuse of discretion occurs when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case." *Sims v. Sims*, 1996-NMSC-078, ¶ 65, 122 N.M. 618, 930 P.2d 153.

**{21}** Here, with regard to the Pontiac, Sangster testified at trial that Ortiz gave her the car, told her that it was hers, and that it was paid for. With regard to the retirement money, Sangster testified that she had the opportunity to retire early from her job with the State of New Mexico by buying out some years of retirement. According to Sangster, Ortiz gave her approximately $26,000 for that purpose, expressing

specifically that it was a gift and not a loan. This evidence supports the district court's findings that the Pontiac and the retirement money were given to Sangster as gifts.

**{22}** As to the Lawson Estate litigation, Oritz's requested findings related to the costs of the litigation, the amount Sangster received as a result of a settlement, and the amounts loaned and repaid by Sangster and her sisters in connection with the litigation. The district court did not adopt those findings. While Ortiz contends that Sangster did not repay him money he loaned her in connection with the Lawson Estate litigation, he provides no citation to the record, and the evidentiary basis for this claim is unclear. "[W]e will not comb the record to find evidence to support a party's position on appeal." *Kilgore v. Fuji Heavy Indus. Ltd.*, 2009-NMCA-078, ¶ 45, 146 N.M. 698, 213 P.3d 1127. Moreover, Sangster's testimony that she repaid Ortiz more than she borrowed in connection with the litigation directly contradicts Ortiz's claim. "[W]hen there is testimony going both ways, an appellate court will not say that the [district] court erred in finding on one side of the issue." *State ex rel. Martinez v. Lewis*, 1993-NMCA-063, ¶ 58, 116 N.M. 194, 861 P.2d 235.

**{23}** To the extent that Ortiz argues that the district court "was not permitted to exercise its equitable powers to grant relief under an unjust enrichment theory of recovery[,]" we conclude that Ortiz has misconstrued the district court's decision. Sangster recovered her share of the value of the Council Oak Road house under the

11

theories of implied contract and joint venture, which Ortiz does not challenge. The court found that Ortiz would be unjustly enriched by Sangster's contribution to the Council Oak Road house, only "[i]n the *absence* of an implied contract or joint venture recovery." (Emphasis added.) Here, there was no absence of implied contract or joint venture recovery, thus, no unjust enrichment.

{24}     We conclude that the district court did not abuse its discretion in finding that the Pontiac and the retirement money were given to Sangster as gifts, nor did the court err in refusing to adopt Ortiz's findings concerning the Lawson Estate litigation loan. Accordingly, we reject Ortiz's argument that the district court erred by not offsetting the amount of the judgment against him.

**Judgments in Favor of Michael and Caitlin Ortiz**

{25}     Ortiz was an heir to the Atrisco Land Grant. Over the years, as a land grant heir, he invested in shares of Westland Development Company, Inc. (Westland). He also purchased Westland shares for the three children. Ortiz redeemed the Westland shares in 2007. Ortiz received the proceeds from the children's Westland shares. In addition to cash, the owners of Westland shares received one share of Atrisco Oil & Gas, LLC, for each Westland share they owned. Shares of Atrisco Oil & Gas, LLC were issued to Ortiz in his own name and as custodian for Steven, Michael, and Caitlin. Although the proceeds of the shares were issued separately and identified to each recipient,

12

Ortiz commingled the funds in a single account in his own name. In November 2011 Sangster filed a motion to require Ortiz to deposit funds in the court registry to protect the interests of the couple's children. The district court entered an order requiring that an estate be opened for Steven, who was deceased, and required that Michael, Caitlin, and the personal representative of Steven's estate be made involuntary plaintiffs. After the trial in October 2012 the court entered a judgment awarding Michael's and Caitlin's investment proceeds that were paid to Ortiz in their names, as well as investments Ortiz held on their behalf.

{26} On appeal Ortiz appears to argue that the district court abused its discretion by ruling on issues not contested by Michael and Caitlin Ortiz and by entering judgments on their behalf. However, the basis for this argument is not clear. Ortiz makes vague references to standing, the concept of real party in interest, and dismissal under Rule 1-041 NMRA. Ortiz makes general statements of law and conclusory assertions without citing to the record or developing the substance of his argument. Accordingly, we decline to address the argument further. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 ("[Appellate courts] will not review unclear arguments, or guess at what a party's arguments might be." (alteration, internal quotation marks, and citation omitted)); *Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (same).

**Attorney Fees**

{27}     Sangster requests that she be awarded attorney fees on appeal arguing that "Ortiz has presented frivolous issues on appeal, strongly suggesting that the true purpose of the appeal is to burden Sangster and delay her enjoyment of the relief awarded by the district court." Additionally, Sangster contends that "Ortiz's deficient presentation of the issues has required Sangster's counsel to expend extra time and effort in reviewing and presenting the evidence on appeal in the manner that Ortiz should have done." We agree.

{28}     For the reasons discussed above, we agree that some degree of sanction is warranted under the circumstances. *See* Rule 12-403(B)(3) NMRA (providing that an appellate court may award "reasonable attorney fees for services rendered on appeal in causes where the award of attorney fees is permitted by law, if requested in the briefs or by motion filed within ten (10) days of entry of disposition"); *State ex rel. N.M. State Highway & Transp. Dep't v. Baca*, 1995-NMSC-033, ¶ 11, 120 N.M. 1, 896 P.2d 1148 (recognizing that appellate courts "have inherent power to impose a variety of sanctions on both litigants and attorneys in order to regulate their docket, promote judicial efficiency, and deter frivolous filings" (internal quotation marks and citation omitted)). We conclude that under the circumstances of this case, Sangster is entitled to attorney fees and costs on appeal. However, the amount must be

14

determined. Accordingly, we remand this matter to the district court to determine reasonable attorney fees and costs for Sangster on appeal. *Am. Nat'l Prop. & Cas. Co. v. Cleveland*, 2013-NMCA-013, ¶ 33, 293 P.3d 954.

**Ortiz's Failure to Abide by the Rules of Appellate Procedure**

{29}     We remind Ortiz's counsel that it is his responsibility to read and follow the Rules of Appellate Procedure when submitting his briefs to this Court.  *See* Rule 12-213. Technically, as Sangster argued, we are not required to address Ortiz's appellate issues where he has failed to abide by the Rules of Appellate Procedure. *See Santa Fe Exploration Co. v. Oil Conservation Comm'n of N.M.*, 1992-NMSC-044, ¶ 11, 114 N.M. 103, 835 P2d 819. Our case law and Rules of Appellate Procedure provide us with the authority to deem such unsupported contentions waived without further consideration. We caution counsel that the sanction, among others available to this Court, of simply declining to address such unsupported issues may be appropriate for any future violations. *See id.*; *Wachocki*, 2010-NMCA-021, ¶ 15; *Fenner v. Fenner*, 1987-NMCA-066, ¶ 28, 106 N.M. 36, 738 P.2d 908; *see also* Rule 12-213(A)(3), (4) (describing the requirements of appellate briefing).

**CONCLUSION**

{30}     For the foregoing reasons, we affirm.

{31}     **IT IS SO ORDERED.**

15

 

_____

**M. MONICA ZAMORA, Judge**

**WE CONCUR:**

_____

**MICHAEL E. VIGIL, Chief Judge**

_____

**J. MILES HANISEE, Judge**